**Paul HELMANDOLLAR and Donna Helmandollar, as parents and legal guardians of Pamela Helmandollar, a minor, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 96–354 C.**

United States Court of Federal Claims.

Dec. 3, 1997.

---

Kristen R. Thompson, Mountain Home, ID, for plaintiffs.

Michael T. Truscott, with whom were Assistant Attorney General Frank W. Hunger, Jeffrey Axelrad and Roger D. Einerson, Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

This opinion addresses defendant's motion to dismiss or for summary judgment filed on August 12, 1996, and plaintiffs' cross-motion for summary judgment filed on September 16, 1996. We conclude that defendant's motion should be granted and that plaintiff's cross-motion must be denied.

**I**

Plaintiffs, as parents and legal guardians of Pamela Helmandollar, seek enforcement of the explicit terms of an agreement with the defendant which resulted in the compromise and settlement of claims brought under the Federal Tort Claims Act (FTCA).

In 1982, plaintiffs commenced a medical malpractice action against defendant pursuant to the FTCA. Pl. Br. (9/16/96) at 2. The action sought damages for injuries suffered by their minor child at birth in the Air Force Hospital at Mountain Home Air Force Base, Idaho. *Id.* In 1984, the parties reached a settlement. *Id.* In August 1984, the settlement agreement was filed with the United States District Court for the District of Idaho, and in October 1984, plaintiffs filed releases of their claims against defendant as required by the settlement agreement. Amend. Compl. at 3–4.

The settlement agreement stated that the United States government would pay to plaintiffs $210,000 in cash initially and would purchase "an annuity from an A+ −rated company that will pay directly to [plaintiffs] ... or a designated trustee ... monthly payments of $250.00 for the life of Pamela Helmandollar" and a lump-sum payment every five years over a span of thirty years aggregating $172,900. Amend. Compl., Ex. 1 at 2. In return for these payments, plaintiffs released the government from their claims. Amend. Compl., Ex. 2.

Pursuant to the settlement agreement, the government made the initial cash payment and purchased two annuities from Executive Life Insurance of California (Executive), an A+ rated annuity company. Def. Br. (8/12/96) at 5, Pl. Br. (9/16/96) at 3. One annuity provided for monthly payments of $250.00 for the life of Pamela Helmandollar. Def. Br. (8/12/96) at 5. The other annuity provided for the periodic lump-sum payments agreed to by the parties. *Id.*

Executive experienced major financial problems in 1991 and was placed into conservatorship by the Insurance Commissioner for the state of California. Def. Br. (8/12/96) at 5. The conservatorship proceedings restructured the annuities, reducing the payments received by plaintiff from $250 to $138.16 per

month and drastically reducing each lump-sum payment as well. Amend. Compl. at 6. In 1993, Executive's revised obligations, including payments under plaintiffs' annuity contracts, were assumed by Aurora National Life Assurance Company. Def. Br. (8/12/96) at 5. Plaintiffs assert that all future payments made will result in shortfalls. Amend. Compl. at 6. Plaintiffs therefore seek an order compelling the government to pay the difference between the settlement agreement and the actual annuity payments for the life of Pamela Helmandollar, plus full payment of each lump-sum amount when due.

Defendant seeks dismissal of the case for failure to state a claim upon which relief can be granted or summary judgment.

**II**

The portion of the settlement agreement on which plaintiffs base their instant claims is that in which defendant undertook to provide "an annuity from an A+ −rated company that will pay directly to [plaintiffs] ... or a designated trustee" the fixed monthly payments and lump sums stated above. Amend. Compl., Ex. 1 at 2 (emphasis added). Plaintiffs assert that "will pay" is a government guarantee of the annuity. Amend. Compl. at 5.

"Words and phrases in the contract should be interpreted, not in isolation, but by examination of the contract as a whole." *Roemmich v. Lutheran Hospitals & Homes Society of America*, 934 P.2d 873, 875 (1996) (citing *Kuta v. Joint District No. 50(J)*, 799 P.2d 379 (Colo.1990)). Upon examining the settlement agreement as a whole, we conclude that the phrase "will pay" is clearly a description of the type of annuity to be purchased and not a guarantee of the amount of money that is actually paid out by the annuity.

The only payments guaranteed by the government in the settlement agreement were the initial cash payments directly to plaintiffs and their counsel and the initial cash outlay to purchase the annuities. It may plausibly be argued that if it had been intended that the federal treasury would guarantee all annuity payments, there would be no occasion to specify the rating for the annuity company which would make the payments.

Defendant's obligations with respect to the monthly payments and periodic lump-sum payments were discharged by the purchase and delivery of annuity contracts meeting the requirements of the settlement agreement. In no way did defendant undertake a guarantee of the solvency of the annuity company.

Plaintiffs assert that they were not aware that two different annuities were purchased, nor were they aware that these annuities were purchased from Executive Life Insurance of California. Pl. Br. (9/16/96), Aff. of Pl. atty. at 1. We fail to see the relevance of these assertions. The settlement agreement specified that the annuities must be purchased from an A+ −rated company, which is indicative of a secure, low risk, highly rated company. Amend. Compl., Ex. 1. It is not contested that Executive Life Insurance of California, at the time the annuities were purchased, had the rating called for by the settlement agreement.

In interpreting the contract itself, the plain language of the contract controls, and here "the language upon which plaintiffs premise their argument describes the value and nature of the annuity defendant was to purchase to fulfill its obligation to plaintiffs, rather than a guarantee that the annuity purchased will faithfully perform over a period of years." *Roemmich*, 934 P.2d at 875–76.

**III**

Based on the foregoing, defendant's motion to dismiss the case for failure to state a claim upon which relief can be granted is GRANTED, and plaintiffs' cross-motion for summary judgment is DENIED. Accordingly, it is ORDERED that judgment shall be entered in favor of the defendant. Each party shall bear its own costs.